IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK CALLAHAM, :
:
Plaintiff, : CIVIL NO. 4:CV-06-1109
:
v. : (Judge Jones)
:
J. MATALONI, *et al.*, :
:
Defendants. :

### MEMORANDUM and ORDER

May 14, 2009

Presently before the Court is Plaintiff Mark Callaham ("Plaintiff" or "Callaham")'s Motion to Compel Discovery (*see* Docs. 18, 54).[1] For the reasons set forth below, the Motion will be denied.

I. **BACKGROUND**

Callaham, an inmate presently confined at the Retreat State Correctional

---

[1] Although Plaintiff did not file an actual motion, it appears that in filing his "Brief in Support of Motion to Compel Discovery," he sought to renew his Motion to Compel filed on February 1, 2007 (Doc. 18). When the Motion to Compel was denied by Order dated June 22, 2007 (Doc. 39), it was without prejudice to Plaintiff's ability to renew the Motion after disposition of the Motion for Summary Judgment (Doc. 29) that was pending at that time. While the Motion to Compel (Doc. 18) related to discovery served upon Defendants Mattaloni and Erickson, who no longer are parties to this action (*see* Doc. 53), it is apparent that Plaintiff construed the provision in this Court's June 22, 2007 Order to mean that he could renew his Motion to Compel generally. Therefore, in light of Plaintiff's *pro se* status, the Court has construed the instant "Brief in Support of Motion to Compel Discovery" (Doc. 54) as a renewal of the February 1, 2007 Motion to Compel (Doc. 18).

Institution ("SCI-Retreat") in Hunlock Creek, Pennsylvania, initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are the following SCI-Retreat officials: Superintendent Charles Erickson; Health Care Administrator J. Mataloni; Stanley Stanish, M.D.; Renato Diaz, M.D.; and Physician Assistant ("PA") Larisa Yarczower.

By Memorandum and Order dated July 19, 2007, the Motion to Dismiss filed on behalf of Defendants Stanish, Diaz, and Yarczower was denied. (Doc. 42). By Memorandum and Order dated November 7, 2007, the Motion for Summary Judgment filed on behalf of Defendants Mataloni and Erickson was granted, and the Clerk of Court was directed to terminate Mataloni and Erickson as parties to this action. (Doc. 53).

In his Complaint, Callaham states that, after developing a rash on his arm, he was examined on September 27, 2004 by PA Yarczower during sick call. Although Yarczower prescribed Callaham an antifungal cream, she purportedly denied his request to be seen by Dr. Diaz. The rash spread to both of Callaham's thighs, and later to his legs and back. Yarczower continued to treat the rash with medications and ointments and eventually scheduled Callaham to be seen by Dr. Diaz.

On October 29, 2004, Plaintiff allegedly spoke with his Imam regarding his

2

medical condition. According to the Complaint, the Imam contacted the SCI-Retreat Medical Department and allegedly was given an unfavorable response. On November 2, 2004, Plaintiff alleges that he showed his rash to Superintendent Erickson, who responded by directing the inmate to submit a written request slip. Two (2) days later, Plaintiff was seen by Dr. Diaz, who allegedly denied Plaintiff's request to be seen by a dermatologist.

Callaham continued to receive treatment, including the taking of a biopsy, from Dr. Diaz and PA Yarczower, as well as a physician from the Dallas State Correctional Institution ("SCI-Dallas") in Dallas, Pennsylvania. On December 10, 2004, Dr. Diaz "ordered oatmeal products;" however, because oatmeal products were not on the "approved list," Yarczower gave Plaintiff a substitute, "adams soap," instead.[2] (*See* Doc. 1, Complaint, ¶ 10). On December 29, 2004, Plaintiff filed his first administrative grievance.

Plaintiff's Imam arranged a meeting with Health Care Administrator Mataloni, who indicated that he would be in attendance when Plaintiff next was seen by Dr. Diaz during the week of January 20, 2005. During that appointment, Mataloni purportedly expressed the belief that a second medical opinion was needed. On

---

[2] However, as noted herein, Plaintiff indicates that he later was supplied with oatmeal products. (*See* Doc. 1 ¶ 13).

February 8, 2005, Callaham began receiving oatmeal soap and B-12 injections. On December 18, 2005, Callaham was evaluated by Dr. Stanish.

Plaintiff filed a second administrative grievance regarding his medical treatment on December 28, 2005. An administrative appeal of the grievance was denied by Defendant Erickson on January 30, 2006. However, Erickson ordered that Plaintiff be seen by a specialist via video conference. A video conference with a dermatologist subsequently was held on February 3, 2006. Plaintiff alleges that Defendants refused to follow a course of treatment recommended by the dermatologist. Specifically, Defendant Mataloni indicated that a medication recommended for treatment of Callaham's condition, Retin-A, was too expensive.

In his Complaint, Plaintiff alleges that, as a result of Defendants' deliberate indifference to his serious medical needs, he has been forced to endure suffering. (*See* Doc. 1 ¶ 20). As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 26(b) provides in relevant part as follows:

> (1) Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

. . .

(2)(c) *When Required.* On Motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues.

It is well-settled that Rule 26 establishes a liberal discovery policy. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Great West Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994). As a general rule,

5

therefore, discovery is permitted of any items that are relevant or may lead to the discovery of relevant information. *Hicks v. Big Bros./Big Sisters of Am.*, 168 F.R.D. 528, 529 (E.D. Pa. 1996).

Relevancy is not limited to the precise issues set out in the pleadings. *Caruso v. Coleman Co.*, 157 F.R.D. 344, 347 (E.D. Pa. 1994). Instead, discovery requests "may be deemed relevant if there is any possibility that the information [requested] may be relevant to the general subject matter of the action." *Id.* Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence. *Callahan v. A.E.V., Inc.*, 947 F. Supp. 175, 177 (W.D. Pa. 1996).

Although "the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits." *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265 (E.D. Pa. 1992) (citations omitted). Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information. *S.S. Fretz, Jr., Inc. v. White Consol. Indus., Inc.*, No. 90-1731, 1991 WL 21655, at *2 (E.D. Pa. Feb. 15, 1991); *see generally* 8 Charles Alan Wright, et al., *Federal Practice and Procedure* §§ 2007-2013 (2d ed.

6

1990).

However, the burden is on objecting parties to demonstrate in specific terms why a discovery request is improper. *Hicks*, 168 F.R.D. at 529; *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982). The party objecting to discovery must show that the requested materials do not fall "within the broad scope of relevance . . . or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure . . . ." *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). Furthermore, federal policy favors broad discovery in civil rights actions, which "should be resolved by a determination of the truth rather than a determination that the truth shall remain hidden." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984). Callaham's motion to compel will be addressed in accordance with the above standards.

**B.  Motion to Compel**

In his "Brief in support of Motion to Compel Discovery" (Doc. 54), Callaham requests that Defendants Stanish, Yarczower, and Diaz be compelled to fully respond to his Request for Production of Documents dated December 12, 2007.

Callaham's Request for Production of Documents consists of twelve (12)

7

separate demands. (*See* Doc. 54-3). In his Brief, he breaks his requests down into four (4) categories: documents relevant to past mistreatment of inmates by Defendants, which are sought in Request Nos. 1 and 12 (*see* Doc. 54 at 3-5); documents relevant to Defendants' qualifications, which are sought in Request Nos. 6 through 8 (*see id.* at 5-6); documents relevant to Defendants' code of ethics, which are sought in Request No. 2 (*see id.* at 6-7); and documents under the possession, custody, and control of the Pennsylvania Department of Corrections ("DOC"), which are sought in Request Nos. 3-5 and 9-11 (*see id.* at 7-8). The Court will analyze each of Callaham's requests, and Defendants' responses thereto, in turn.

1. **Request No. 1**

In his first request, Callaham seeks any and all grievances, complaints, or other documents received by Defendants concerning any medical issues of any and all inmates treated by any of the Defendants to this action, and any memoranda investigative files, or other documents created in response to such documents since January 1, 2001. (*See* Doc. 54-3 ¶ 1). Callaham asserts that he seeks this information to show a pattern of mistreatment of inmates by Defendants. (*See* Doc. 54 at 4).

Defendants object that this request elicits documents related to the medical treatment of third parties, which is clearly privileged medical information. (*See* Doc.

55, Defendant's opposition brief, at 2). Defendants note that the confidentiality of this information is protected under state and federal statutes, including the Health Insurance Portability and Accountability Act ("HIPAA"), doctor-patient privilege, and other statutes. (*See id.* at 3). As such, Defendants maintain that this information cannot be disclosed to Defendants without prior written consent by any patients involved. (*See id.*).

Defendants also object on the basis that the request seeks documents which Defendants have no authority to obtain. (*See id.* at 2). Specifically, Defendants maintain that they do not possess or have access to any files of grievances of any other inmates, but rather in the course of this action, Defendants' counsel only has obtained grievances generated by Callaham. (*See id.* at 3).

The Court finds that Defendants have met their burden of demonstrating that the request relates to confidential or privileged information. *See S.S. Fretz Jr., Inc.,* 1991 WL 21655, at *2. Even if Callaham is not seeking grievances and other complaints filed by other inmates regarding treatment of their medical issues for the purpose of scrutinizing the medical treatment that was provided to them, the disclosure of these documents containing details of their medical conditions necessarily would violate their rights to confidentiality. Accordingly, the Motion to

9

Compel will be denied with respect to Request No. 1.

   2.   **Request No. 12**

Callaham requests the complete personnel file of each Defendant as maintained by their employers. (*See* Doc. 54-3 ¶ 12). Callaham asserts that he seeks this information to attempt to demonstrate a pattern of mistreatment of inmates by Defendants. (*See* Doc. 54 at 3-4).

Defendants object on the basis that the information sought is irrelevant and not calculated to lead to admissible evidence. (*See* Doc. 55). Further, Defendants submit that the information requested is not in their possession, but rather to the extent it exists, it would be in the possession of answering Defendants' employer, Prison Health Services, Incorporated ("PHS"), a non-party to this action. (*See id.*).

Callaham's request is overly broad, and therefore overly burdensome, to the extent he seeks the *complete* personnel file of each of the three answering Defendants. Moreover, the Court will accept Defendants' contention that, to the extent the information sought is in the possession and control of PHS, Defendants do not have the ability to produce it. Accordingly, the Motion to Compel will be denied with respect to Request No. 12.

   3.   **Request Nos. 6, 7, 8**

10

In Request Nos. 6, 7, and 8, Callaham requests any and all documents illustrating Defendant Diaz, Stanish, and Yarczower's qualifications to provide medical attention and care; qualifications to treat skin conditions and diseases; and qualifications to override the treatment plan ordered by a specialist. (*See* Doc. 54-3 ¶¶ 6, 7, 8). Defendants object to these requests as being overly broad and burdensome, and also object to Request No. 8 as being vague and ambiguous. (*See* Doc. 55 at 4). Callaham counters that his requests are "very specific" and that the information he seeks is "highly relevant" to his claims. (*See* Doc. 54 at 5-6).

The Court finds that Defendants have met their burden under *Hicks* and *Goodman* of showing that Callaham's requests are overly broad and burdensome. The Court agrees that the requests are overly broad in that they seek "any and all documents" relating to Defendants' medical qualifications. As pointed out by Defendants, the requests elicit a whole range of documents, including, but not limited to, educational or professional materials to which Defendants have been exposed, licensure applications, and evaluative materials created by others. (*See* Doc. 55 at 4-5). Moreover, it would appear that many of the documents elicited by these requests would not even be in the possession or control of Defendants, thus rendering the request overly burdensome. Thus, the Motion to Compel will be denied with respect

to Request Nos. 6, 7, and 8.

### 4. Request No. 2

Callaham requests the "Code of Ethics" that each Defendant is required to follow. (*See* Doc. 54-3 ¶ 2). Defendants responded to this request that they are "required to follow the ordinary ethics for their respective profession[s] which are a matter of public record." (*See* Doc. 55 at 5). Callaham objects to this response on the basis that he has "no way of knowing what these ethics are" because he is incarcerated. (*See* Doc. 54 at 6).

Federal Rule of Civil Procedure 26(b)(2)(C)(i) permits a court to limit discovery where the discovery sought "can be obtained from some another source that is more convenient, less burdensome, or less expensive." The Court finds that Defendants provided a legitimate response to Callaham's request by stating that they are required to follow the ordinary ethics for their respective professions. As pointed out by Defendants, the request elicits anything from "codes of ethics" promulgated by national, state, and local voluntary medical associations to codes issued by various specialty-related organizations. Accordingly, this situation is the type contemplated by Fed. R. Civ. P. 26(b)(2)(C)(i) in that the information requested is obtainable from a more convenient, less burdensome, or less expensive source, such as the law library

12

at Callaham's place of confinement. Therefore, the Motion to Compel will be denied with respect to Request No. 2.

### 5. Request Nos. 3-5 and 9-11

In Request No. 3, Callaham seeks any and all policies, directives, instructions or other documents pertaining to the provision of medical care of prisoners under the care, custody, and control of the DOC. (*See* Doc. 54-3 ¶ 3). In Request No. 4, he asks for any and all documents pertaining to the subscribing or denial of medications. (*See id.* ¶ 4). In Request No. 5, Callaham requests the list of medications authorized to be used by the DOC. (*See id.* ¶ 5).

In Request No. 9, Callaham asks for any and all documents showing the conditions of the DOC contract with SCI-Retreat's Health Care Provider, including but not limited to the contract itself. (*See id.* ¶ 9). In Request No. 10, Callaham requests any and all documents illustrating the medications he has received since January 1, 2004 from the pharmacy used by SCI-Retreat. (*See id.* ¶ 10). In Request No. 11, Callaham requests any and all documents provided to Defendants from "the Specialist" and any and all documents provided to the Specialist with regard to Plaintiff's skin disease. (*See id.* ¶ 11).

Defendants object to the above requests on the basis that the requested

13

documents are not in their possession in that they either are in the possession of the DOC or in Callaham's medical file. (*See* Doc. 55 at 5-6; Doc. 54-4 ¶¶ 3-5, 9-11). Callaham claims that Defendants have access to the requested documents and thus they should produce them because the DOC is not a party to this action and is not likely to give him these documents. (*See* Doc. 54 at 8).

The Court agrees with Defendants that Request Nos. 3, 5, and 9 seek documents that are in the possession of the DOC and thus would not be "readily available" to Defendants. Accordingly, this Court will deny the Motion to Compel with respect to these requests in light of the fact that the proper method for Callaham to obtain them would be to request them from the DOC pursuant to Fed. R. Civ. P. 34(c) and 45.[3]

As to Request Nos. 4, 10, and 11, the Court agrees with Defendants that the information Callaham seeks would be contained in his medical file, and thus the proper procedure for him to follow to attempt to find this information would be to make an appointment with his counselor to review his medical chart. Consequently, the Motion to Compel will be denied with respect to Requests 4, 10, and 11.

---

[3] The Court will set the deadline for the completion of discovery in this case at sixty (60) days from the date of this Order to allow Plaintiff time to exercise this option.

14

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (Doc. 18) will be denied in its entirety. The Court also will set case management deadlines in the interest of moving toward a final disposition of this case. An appropriate Order will enter.

John E. Jones III
United States District Judge